## Case No. 4,090.

### In re DRISKO.

[2 Lowell, 430;[1] 13 N. B. R. 112.]

District Court, D. Massachusetts. Sept., 1875.[2]

BANKRUPTCY—NEW PETITION—DISCHARGE—ORDER NUNC PRO TUNC.

1. A bankrupt, who has not been discharged, or to whom a discharge has been refused, and who has contracted new debts, may file a new petition in bankruptcy.

[Cited in Re Flanagan, Case No. 4,850.]

2. Semble, that whenever an involuntary petition may be sustained, a voluntary petition may be.

3. Semble, that those who were creditors when the first petition was filed may prove their old debts against the assets in the new bankruptcy; and that a discharge under the new petition would apply only to new debts, and to such old debts as had been proved anew.

4. A discharge may be refused nunc pro tunc where the parties had neglected to have the order entered at the time the decision of the court was announced, but had acted on the theory that the order was in force.

[Cited in Re Brockway, 23 Fed. 585.]

This was a voluntary petition for the benefit of the bankrupt act. A creditor having an attachment on mesne process upon the chattels of the bankrupt petitions that the proceedings may be stayed and annulled, on the ground that the bankrupt has before applied for the benefit of the act, in March, 1872, and that in February, 1875, his discharge was refused, by reason of certain frauds specified and proved against him. To this it was replied that Drisko had contracted new debts since the date of the former proceedings, and before his second petition was filed, amounting to more than $300. The facts alleged on both sides were admitted to be true; and it was further agreed that the bankrupt had some property upon which these proceedings might operate, if they could be sustained, being in fact the same property which the objecting creditor had attached.

E. Avery and E. M. Johnson, for objecting creditor, cited In re Farrell [Case No. 4,680]; In re Thompson, 58 Law T. 399; In re Sydney, 10 Ch. App. 208; In re Russell, Id. 255.

C. W. Eaton and S. K. Hamilton, for bankrupt, cited Fisher v. Currier, 7 Metc. [Mass.] 424; Gilbert v. Hebard, 8 Metc. [Mass.] 129.

LOWELL, District Judge. A very interesting question is presented by this petition, which I understand is likely to be carried to the circuit court. I have thought it my duty, however, to consider it with as much attention as if my decision would be final.

It was twice decided in Massachusetts, that, when a discharge had been refused to a bankrupt or insolvent, he might yet apply

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

[2] [Affirmed in Case No. 4,086.]

again for the benefit of the statute, if he had contracted new debts sufficient in amount to give the court jurisdiction. Fisher v. Currier, 7 Metc. [Mass.] 424; Gilbert v. Hebard, 8 Metc. [Mass.] 129. In the former of these cases, the arguments on the one side and the other were given by Shaw, C. J., with his accustomed thoroughness, and the conclusion reached was that the policy of the law would be best subserved, and its true intent be met, by distributing newly acquired assets equally among the new creditors and such of the old creditors as chose to come in, and by permitting a discharge from the new debts. It was taken for granted that the decree of discharge could not operate upon debts which were proved or provable under the earlier bankruptcy, because as to these it was res judicata that the bankrupt was not entitled to it; and it was said that the discharge in the new proceedings must be limited in terms to the new debts, unless the old creditors, or some of them, elected to come in and share in the new assets. The reasoning of the chief justice and the decisions in those cases have proved satisfactory to the profession, I believe, and they are entirely so to my mind.

But there have been cited here some provisions of the bankrupt act, and some recent decisions in England, which are relied on to countervail the older arguments and decisions. By section 5116 of the Revised Statutes, it is enacted that no person who has once been discharged and becomes bankrupt again upon his own petition, shall be entitled to a discharge, unless his estate is sufficient to pay seventy per cent. of the debts proved, or unless three-fourths of his creditors assent; but a bankrupt who proves that he has paid all his old debts, or has been voluntarily released from them, may have a discharge as if he had not before been bankrupt. The argument from this section is, that it cannot be believed that congress intended to put a bankrupt, who had been refused his discharge for fraud, in a better condition than one who had received it for upright and honorable conduct; and, therefore, as no disability is imposed on one who becomes bankrupt a second time, not having received his discharge the first time, it is to be taken that congress intended that such a person should not become bankrupt at all. This construction appears to me to stretch an inference beyond its legitimate bearing. The insolvent law of Massachusetts, from which so much of the bankrupt law was taken, had a provision somewhat similar to that of section 5116, but applied it to all second insolvencies, and not merely to those where there had been a discharge, nor to voluntary cases. It seems probable that the idea in the mind of the framers of the bankrupt law in thus modifying the insolvent law was, that a man who had never been discharged had never had the full benefit of the statute. They overlooked, perhaps, the question of

fraud, and said a man may be bankrupt a second time, whose first bankruptcy was compromised or dismissed for one reason or another, or who neglected to apply for his discharge in due season. That there may be such cases is shown by the authority cited by counsel. In re Farrell [Case No. 4,680]. It would have been easy to say that no one whose discharge had been refused for cause should again become bankrupt, and that the decisions in Massachusetts should not be applicable, if such had been the intent; and as there is nothing in any part of the statute to prevent a man becoming bankrupt a second time, and many implications that he may, I think it a sounder construction to hold that this particular case was overlooked, than that a prohibition against all bankruptcy by a person once refused his discharge should be inferred from a section which says nothing whatever about that class of cases.

It was admitted at the argument that a man may be made bankrupt a second time by his creditors, if he has committed new acts of bankruptcy, and has newly acquired property on which the proceedings may operate. Now, under our system, a voluntary petition is an act of bankruptcy; and I have repeatedly held, and it is the foundation of an ordinary practice in this court, that, after such a petition has been filed, any creditor may carry on the proceedings, if the debtor fails or neglects to do so. None of the able members of this bar practising in bankruptcy have ever objected to this practice, and most of them have availed themselves of it. Indeed, I look upon it as a fundamental and most important part of our system, that although the mere fact of insolvency is not enough to authorize proceedings in invitum, yet if the debtor admits by a solemn act in court that he is hopelessly insolvent, the system takes effect, and his assets are to be equally divided. I am inclined to think that there is no case in which an involuntary petition may be maintained against any one in which a voluntary petition by him will not be. It is true that acts of bankruptcy may be committed by a solvent person; but when a person solemnly in court admits his insolvency, no one can contradict him; and if he was solvent the moment before he filed his petition, he is insolvent the next moment.

The English system differs from ours in two respects, among others: 1. Excepting during the eight years that the statute of 1861 was in operation, no one has ever been permitted to become bankrupt on his own petition. Connected with this was the notion which runs through all the decisions that the proceeding is to be begun solely for the benefit of the creditors. Bankruptcies concerted with the debtor have been repeatedly set aside in England. It has been held that a creditor ought not to begin proceedings unless there are assets to distribute. The mere discharge of the debtor is not ground enough for a bankruptcy. 2. The property of a

bankrupt who had not received his discharge belonged to his assignees, to the end of the bankrupt's life, and consequently a second bankruptcy was void at law, and would be enjoined in equity, unless the assignees under the first bankruptcy had estopped them-selves by their acquiescence in the debtor's contracting new debts on the faith of new property. This doctrine has been a good deal modified by the statute of 1869; but even now the bankrupt can acquire no property until his discharge or the close of the first bankruptcy, and not then unless certain conditions are fulfilled. It will be seen at a glance that our law is much more favor-able to the debtor, and encourages proceedings by him for his own benefit as well as for the distribution of his property; and his future earnings and acquisitions are his own from the time of filing the petition. Examined in the light of these marked differences between the English statute and ours, the cases cited will be found to support rather than to shake the conclusion to which I have come. Under the statute of 1869 the debtor may propose a liquidation by arrangement, which has many of the features of our voluntary bankruptcy, but leaves more power with the creditors, and is not bankruptcy unless the creditors choose. But so far as the property goes, it resembles bankruptcy; and, if the liquidation is not closed, the property will all belong to the trustee, whether newly acquired or not, unless the creditors vote a discharge. Under this law, it was held in the cases cited, that while one composition remained unsatisfied, a new one could not be upheld, even though it brought in new creditors or new property, unless this property had been released by the old creditors, and in that case it might be the subject of a new arrangement.

Our statute itself releases after-acquired property from the operation of the old proceedings. When, therefore, the cases cited decide that newly-acquired property, which is not subject to the old liquidation, may be the subject of a new one, they decide the point in the same way, mutatis mutandis, as the courts of Massachusetts decided it. It is true that by our law the new property remains liable to process if the debtor does not receive his discharge; but this is not at all the liability of the English law. With us it remains liable to ordinary process by any creditors, old or new, who may be in a situation to attach or levy; while in England, in unfinished bankruptcies, it remains solely the property of the old creditors represented by the assignee. With us, when there are new debts and new assets, there are the same reasons for a second bankruptcy that there were for the first; while in England the second can have no operation until the close of the first, however long it may be kept open, or until a discharge is granted, whatever may happen in the mean time. Which system is better in itself I do not say; but probably each

may be the fitter for the country in which it obtains. Our system undoubtedly leads to second bankruptcies, but it has been found to work well, and is more just to the new creditors, while not unjust to the others.

I have thus far assumed the truth of the facts admitted by the parties, but I now find, on examining the record and my notes, that the discharge of Drisko was never formally refused. A hearing was had, and it was proved that all, or nearly all, the creditors, excepting the firm now opposing the petition, had been paid, but that a fraud has been committed with the intent to prevent these very creditors from recovering their debt; and it was intimated by me that Drisko was not entitled to his discharge; upon which the parties agreed to try the case pending between them in the state court, as if the bankrupt could not receive his discharge. No one ever asked me to enter an order refusing the discharge. Under these circumstances, I doubt whether this case should be permitted to proceed until the old case is disposed of. Upon hearing the parties again as to this last point, I find that the case which was pending in the superior court of the state by these objecting creditors against Mr. Drisko proceeded to judgment as if his discharge had been refused; and by the effect of that judgment these creditors hold the sureties on his bond, who would have been discharged if that judgment had not been obtained. It happens, unfortunately, that the sureties are now bankrupt, and these creditors have not obtained as much advantage as they expected, but they have all the legal results of the debtor's failure to obtain his discharge.

Under these circumstances, I think I am bound, at the bankrupt's request, to refuse the discharge in the former proceedings, nunc pro tunc, and then the petition to vacate will be dismissed, and it is so ordered.